# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **QUINCY MAURICE FUQUA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **NO. 3:17-cv-01243** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are Petitioner's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. No. 1); Supplemental and Amended Motions to Vacate (Doc. Nos. 4, 7, 23, 25); and the Government's Responses (Doc. Nos. 16, 27). The Court appointed counsel for Petitioner, who has filed a Response (Doc. No. 37), indicating the case is ripe for decision.

For the reasons set forth herein, Petitioner's Motions to Vacate (Doc. Nos. 1, 4, 7, 23, 25) are **DENIED,** and this action is **DISMISSED**.

### II. Petitioner's Criminal Proceedings

Petitioner was indicted on the following charges: unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count One); possession and discharge of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four); and possession of marijuana with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (Count Five). (Docket No. 22 in Case No. 3:10-cr-00065). The Indictment

named Victor L. Owens and Buin Edward Hodison as co-defendants. (*Id.*) Defendant Hodison pled guilty early on in the case (Doc. No. 105 in Case No. 3:10-cr-00065), and Defendant Owens, who was severed for trial, pled guilty after Petitioner's trial. (Doc. Nos. 218, 306 in Case No. 3:10-cr-00065).

Petitioner filed pretrial motions to suppress evidence, which were denied by now-retired Judge Todd J. Campbell, who was assigned to the case. (Doc. Nos. 103, 177 in Case No. 3:10-cr-00065). Also, before trial, the Government filed an Information Alleging Prior Felony Drug Conviction (21 U.S.C. § 851) (Doc. No. 193 in Case No. 3:10-cr-00065), stating that Petitioner had a prior conviction for possession for resale of marijuana in Davidson County, Tennessee.

After a week-long trial, Petitioner was convicted on all counts. (Doc. Nos. 255, 258 in Case No. 3:10-cr-00065). Petitioner's counsel filed, and Judge Campbell denied, a motion for judgment of acquittal and/or a new trial. (Doc. No. 311 in Case No. 3:10-cr-00065). At the sentencing hearing, Judge Campbell imposed a total sentence of 248 months of imprisonment, as follows:

- Count One (unlawful possession of a firearm by a convicted felon) - 120 months;

- Count Four (Section 924(c) – possession and discharge of a firearm in furtherance of a drug trafficking crime) - 60 months, consecutive to Counts One and Five; and

- Count Five (possession with intent to distribute a quantity of marijuana) – 120 months, with 68 months consecutive to Count One and 52 months concurrent with Count One.

(Doc. Nos. 366, 367 in Case No. 3:10-cr-00065). After sentencing, and while the case was pending on appeal, Petitioner filed a motion for new trial based on newly discovered evidence, *i.e.,* statements made by Co-Defendant Owens regarding the discharge of firearms on the night in

2

question. (Doc. Nos. 396, 397 in Case No. 3:10-cr-00065). Judge Campbell denied the motion.

(Doc. No. 414 in Case No. 3:10-cr-00065).

On appeal, the Sixth Circuit summarized the evidence adduced at trial, as follows:

In February 2010, the Nashville police searched the trash behind Fuqua's house. They found trace amounts of marijuana in numerous containers within the same trash bag, seven smoked marijuana blunts, and a gun holster. They also found a receipt from the week before, mail with Fuqua's address on it, and paperwork with Fuqua's Social Security Number on it. The next day, Detective Matthew Grindstaff presented a magistrate judge with an affidavit detailing the items found in the trash, explaining that the police had information that Fuqua's phone number was being used to deal drugs and that illegal drugs were being sold, packaged, or consumed at Fuqua's address. The affidavit added that the police had surveilled Fuqua's house and seen two cars parked out front, both of which were registered to Fuqua. The magistrate judge issued a warrant authorizing the police to search Fuqua's house for evidence of drug use and distribution.

Around midnight that same night, a group of officers went to Fuqua's house to execute the search warrant. According to the officers' testimony, an officer turned on the emergency blue lights on a patrol car outside the house and used its PA system repeatedly to announce 'Metro Police, search warrant, do not resist.' Meanwhile, Detective Grindstaff knocked three times on Fuqua's door, each time announcing 'Metro Police.' When no one promptly answered, Detective Atif Williams broke down the door. Grindstaff stepped forward to enter and continued to announce himself. While in the doorway, he heard a gunshot and saw one person on the couch by the door with his arms up. Grindstaff moved toward the kitchen, where he saw Fuqua and Victor Owens each holding guns. Fuqua and Owens ducked behind a wall; then someone reached around and shot at Grindstaff. Grindstaff ducked and fired back, hitting Fuqua in the stomach. Grindstaff and another officer secured Owens and searched Fuqua. They found around $1,640 in cash in Fuqua's pockets. The police called paramedics, who took Fuqua to a hospital.

When the officers searched Fuqua's home, they found 19.5 grams of marijuana and two ecstasy tablets inside a piece of a black plastic bag on the kitchen counter, a set of digital scales, 4.3 grams of marijuana in a clear plastic bag in a drawer in the kitchen, 4.0 grams of marijuana in a plastic bag on the stereo in the living room, another 2.2 grams of marijuana in a newspaper under the couch in the living room, a poster depicting different kinds of marijuana in the basement, and three guns – including a .44 caliber revolver that Fuqua admitted was his. Fuqua told police that he had fired the gun at the ceiling. But a crime-scene investigator testified that there was no evidence of a bullet in the ceiling.

3

(Doc. No. 416, at 1-3, in Case No. 3:10-cr-000650); *United States v. Fuqua*, 636 Fed. Appx. 303, 306-07 (6th Cir. 2016). The appeals court rejected the challenges raised by Petitioner to: (1) denial of his suppression motions; (2) denial of his request to sever the drug trafficking charge; (3) denial of his objection to allowing Detective Grindstaff to testify as both a fact and opinion witness; (4) admission of Trial Exhibit 8E; (5) denial of his challenge to the sufficiency of the evidence; (6) reliance on the Section 851 Information to enhance his sentence; (7) reliance on U.S.S.G. § 3A1.2(c)(1) to enhance his sentence; (8) relying on U.S.S.G. § 2K2.1(c)(1) to enhance his sentence; and (9) denial of his request for a new trial, or alternatively, for a new sentencing hearing. *Id.*

The Supreme Court subsequently denied Petitioner's petition for writ of certiorari. (Doc. Nos. 435, 436 in Case No. 3:10-cr-00065).

## III. <u>Analysis</u>

### A. <u>Section 2255 Proceedings</u>

Petitioner has brought this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States,* 398 F.3d 855,

4

858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

If a factual dispute arises in a § 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States,* 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007)).

Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

## B. **Petitioner's Claims**

Through his Motions to Vacate, Petitioner asserts the following claims: (1) the Government failed to disclose certain evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); (2) the Government engaged in prosecutorial misconduct; (3) the district court erred in enhancing his sentence under Section 851; (4) the district court erred in applying a six-level increase to the base offense level for shooting at a law enforcement officer; (5) the district court erred in failing to consider fully Petitioner's mental health records, including the Forensic Psychologist Report, at sentencing; and (6) he received the ineffective assistance of counsel.

## C. ***Brady/Giglio***

Petitioner argues the Government violated his Fifth and Fourteenth Amendment rights, as

5

applied in *Brady v. Maryland*, by failing timely to provide the defense with "three additional bags of untested green leafy substances." (Doc. No. 4, at 4; Doc. No. 23, at 29). Petitioner contends the materiality of the evidence became evident when the jury asked to view it.

*Brady* requires the government to disclose evidence that is "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley,* 473 U.S. 667, 674-75, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (quoting *Brady,* 373 U.S. at 87). To establish a *Brady* violation, the defendant must show (1) the nondisclosed evidence was favorable to him; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) the suppression prejudiced him. *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999); *United States v. Taylor,* 471 Fed. Appx. 499, 517 (6th Cir. 2012). In *Giglio v. United States,* 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), the Court held that evidence impeaching the credibility of a government witness is considered "favorable" to the accused under *Brady.* 405 U.S. at 154 ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility" must be disclosed); *see also Bagley,* 473 U.S. at 676; *Taylor,* 471 Fed. Appx. at 517.

"'To establish prejudice, the nondisclosure must have been so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.'" *Taylor,* 471 Fed. Appx. at 517 (quoting *United States v. Douglas,* 634 F.3d 852, 860 (6th Cir. 2011)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682. "'The question is not whether the defendant would more likely than not have received a different verdict with the [suppressed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Taylor,*

6

471 Fed. Appx. at 517 (quoting *Bell v. Bell,* 512 F.3d 223, 236 (6th Cir.2008)). In considering

materiality, the evidence should be "considered collectively, not item by item." *Kyles v. Whitley,*

514 U.S. 419, 436, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). "'[W]here the undisclosed evidence

merely furnishes an additional basis on which to challenge a witness whose credibility has already

been shown to be questionable or who is subject to extensive attack by reason of other evidence,

the undisclosed evidence may be cumulative, and hence not material.'" *United States v. Ramer,*

883 F.3d 659, 672 (6th Cir. 2018) (quoting *Bales v. Bell,* 788 F.3d 568, 574 (6th Cir. 2015).

In seeking a new trial, Petitioner's trial counsel raised a challenge regarding the evidence

to which Petitioner refers here. Judge [Todd] Campbell denied the challenge:

> Defendant argues that the jury was confused about Trial Exhibit 8E, and that the
> Government's closing argument wrongfully characterized Trial Exhibit 8E and the
> money evidence.   In arguing that the Government's closing confused the jury, the
> Defendant cites the following statement by the prosecutor in discussing distributive
> intent:
>
> > The presence of equipment used for the sale of drugs; digital scales.
> > Large amount of case [cash]; $1,640 found in the defendant's pockets.
> > The manner in which the drugs were packaged; multiple baggies street-
> > level sales.   Presence or absence of firearms; you heard there were
> > multiple firearms in this house and one specifically attributable to this
> > defendant, .44 caliber revolver.
>
> (Trial Transcript, Vol. IV, at 20 (Docket No. 269)). Defendant argues that there
> were no 'multiple baggies' in evidence, noting that there were only three quantities
> of marijuana located in bags. The Defendant contends that the prosecutor's
> argument coupled with the jury's misunderstanding regarding the nature of Trial
> Exhibit 8E resulted in jury confusion and entitles him to a new trial.
>
> During deliberations, the jury sent the Court a note asking: 'Can we open 8E to
> view actual baggies?' (Id., at 51).   After sharing the contents of the note with the
> parties, all agreed, including the Defendant, that the exhibit should not be opened,
> and the Court sent a response to that effect to the jury. (Trial Transcript, Vol. IV, at
> 51-56 (Docket No. 269)).
>
> At the evidentiary hearing on April 24, 2013, the Defendant introduced evidence

7

relating to Trial Exhibit 8E. Jennifer Sullivan, a Special Agent working in the TBI crime laboratory, testified that the exhibit at issue came to her in an evidence bag containing a large black piece or bag of torn plastic that had been tied. The large black plastic piece contained marijuana, and also contained a smaller black piece of tied plastic with marijuana, which contained another small black piece of tied plastic with marijuana, and a clear piece of tied plastic with marijuana. Two ecstasy pills were also present. Ms. Sullivan testified that in putting the exhibit back together after conducting her analysis, she repackaged it with other clear plastic ('ziploc') lab bags for safekeeping.

The Court is not persuaded that jury confusion about the lab bags contained in Trial Exhibit 8E led the jury to wrongfully convict the Defendant. As pointed out above, the testimony at trial indicated that officers initially obtained 'several baggies with marijuana inside' from the trash at the residence, along with marijuana contained in a McDonald's cup and in a brown paper bag. (Trial Transcript, Vol. II, at 11-14 (Docket No. 267)). In addition, the testimony at trial indicated that during execution of the search warrant at the residence, officers obtained a clear plastic bag of marijuana recovered from a drawer in the kitchen, a white plastic bag of marijuana recovered from the stereo in the living room, and the black plastic bag of marijuana recovered from the kitchen counter next to the digital scales in the kitchen. (Id., at 46-47, 69-70, 130-131). Moreover, photographs of the evidence as found by the police were presented to the jury. Therefore, the jury did not need to rely on Trial Exhibit 8E in concluding that multiple packages or baggies of marijuana were at the residence. For the same reason, the prosecutor's closing did not mischaracterize the evidence. Also, Trial Exhibit 8E in fact contained multiple baggies of marijuana evidencing drug trafficking. This argument is without merit.

Defendant's argument that the 'lab bags' inside Trial Exhibit 8E were an 'extraneous influence' on the jury, and therefore, an exception to the bar on juror testimony under Fed. R. Evid. 606, is also without merit. Trial Exhibit 8E was admitted without objection at the trial, and was not 'extraneous' to the proceedings.

(Doc. No. 311, at 10-11, in Case No. 3:10-cr-00065).

The Sixth Circuit also addressed the issue on appeal:

Fuqua argues that the district court improperly admitted the government's Exhibit 8E. That exhibit was a piece of a black plastic bag with multiple ziploc bags inside it. In slight contrast, at Fuqua's home, the piece of black plastic contained multiple pieces of torn and tied plastic with marijuana inside each of them. Agents at the crime lab replaced those torn pieces of plastic with the ziploc bags after they analyzed the marijuana inside.

Fuqua failed to object to introduction of this evidence at trial, so we review only

for plain error. *See United States v. Deitz,* 577 F.3d 672, 688 (6th Cir.2009). We 'may correct the claimed mistake only if there is (1) an error (2) that is plain, (3) that affected the party's substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings.' *United States v. Henry,* 797 F.3d 371, 374 (6th Cir.2015) (internal quotation marks omitted).

The ziploc bags did not have a significant effect on Fuqua's trial. As noted above, so far as the record shows here, agents at the crime lab merely replaced the torn and tied pieces of plastic inside the black bag with ziploc bags that more securely held the same contents. That the agents swapped torn and tied 'bags' for ziploc bags did not affect Fuqua's substantial rights.

(Doc. No. 416, at 6-7, in Case No. 3:10-cr-00065); *United States v. Fuqua*, 636 Fed. Appx. at 309.

Petitioner argues that the evidence that became Exhibit 8E at trial was in a different form when it was seized at his residence. According to Petitioner, the evidence consisted of "one black bag" when it was seized from his kitchen, but during the chain of custody, became three additional bags. Petitioner argues the evidence of the lab witness describing the change, and the three additional bags, were not disclosed during discovery, in violation of *Brady*.

Even if the Court assumes Petitioner has established the first two *Brady* requirements – that the evidence was favorable and was suppressed by the prosecution – he has not established the evidence was material. As the Sixth Circuit explained, the change in form from one black bag to three additional bags did not have a significant effect on Petitioner's trial. In addition to Trial Exhibit 8E, the jury heard testimony about other marijuana evidence connected to Petitioner's residence: baggies with marijuana, marijuana in a McDonald's cup, and marijuana in a brown paper bag seized from Petitioner's trash; a plastic bag of marijuana seized from a kitchen drawer; and a plastic bag of marijuana seized from the stereo in the living room. (Doc. No. 267, at 11-14, 46-47, 69-70, 130-31, in Case No. 3:10-cr-00065). Petitioner simply has not shown a reasonable probability that the nondisclosure of the change in form of marijuana admitted as Trial Exhibit 8E

9

undermines confidence in the outcome of the trial. Thus, Petitioner's *Brady* claim is without merit.

## D.  Prosecutorial Misconduct

Petitioner also argues that the Government's modification of the evidence that became Trial Exhibit 8E constitutes prosecutorial misconduct because the repackaging made it appear the marijuana was for resale. In evaluating a claim for prosecutorial misconduct, the court must first determine whether the challenged conduct was improper. *United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010). If the conduct was improper, the court must determine whether the impropriety was sufficiently flagrant to warrant reversal by considering four factors: (1) the degree to which the conduct tended to mislead the jury or prejudice the defendant; (2) whether the conduct was isolated or extensive; (3) whether the conduct was deliberately or accidentally put before the jury; and (4) the overall strength of the evidence against the defendant. *Id.* at 982.

For the reasons discussed above with regard to Petitioner's *Brady* claim, the Court is not persuaded Petitioner has satisfied these requirements. As Judge [Todd] Campbell pointed out, Special Agent Sullivan, who worked in the TBI crime laboratory, testified that in putting Exhibit 8E back together after testing, she repackaged it with new plastic lab bags for safekeeping because the original bag had been shredded. (Doc. No. 330, at 12-55, in Case No. 3:10-cr-00065). Petitioner has not shown this conduct was improper. Even if it could be deemed improper, however, Petitioner has not shown the repackaging of the exhibit misled the jury or prejudiced him, especially in light of the other marijuana evidence presented at trial. That evidence was outlined by the Sixth Circuit on appeal:

> Here, in Fuqua's house, the police found about 30 grams of marijuana in several different containers and locations, a digital scale next to one of the bags of marijuana, a poster showing different types of marijuana, and three guns. The government also presented evidence that Fuqua had $1,640 in cash in his pocket at

10

the time of the search warrant. Detective Grindstaff testified that the evidence collected at Fuqua's house was consistent with street-level drug trafficking. This evidence and testimony was sufficient to support Fuqua's conviction under § 841(a).

(Doc. No. 416, at 7); *United States v. Fuqua*, 636 Fed. Appx. at 309. Petitioner's prosecutorial misconduct claim is without merit.

**E.** **Section 851 Enhancement**

Petitioner argues the district court erred at sentencing by enhancing his sentence under 21 U.S.C. §§ 841 and 851 (Doc. No. 23, at 22, 35-37; Doc. No. 25). Under Section 841(b)(1)(D), a defendant whose drug trafficking crime involves less than 50 kilograms of marijuana is subject to a five-year maximum sentence, unless he has a prior conviction for a "felony drug offense." In that case, the defendant is subject to a 10-year maximum sentence. *Id.* In order for the prior conviction enhancement to apply, the Government must file an information with the court before trial stating the previous conviction upon which it seeks to rely. 21 U.S.C. § 851. Before trial in this case, the Government filed an Information (Doc. No. 193 in Case No. 3:10-cr-00065) alleging Petitioner was previously convicted of "Possession for Resale of Marijuana, a Class E felony," on November 6, 2008, in the Criminal Court of Davidson County Tennessee.

Petitioner argues that his prior conviction does not qualify as a "felony drug offense" under the statute, principally relying on *Descamps v. United States,* 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), *United States v. Fifter,* 206 Fed. Appx. 502 (6th Cir. 2006); *Sanders v. United States,* 404 F.3d 980 (6th Cir. 2005), and *United States v. Havis,* 927 F.3d 382 (6th Cir. 2019). In *Descamps*, the Supreme Court considered whether a California burglary conviction qualifies as a "violent felony" for purposes of a sentence enhancement under the Armed Career Criminal Act (ACCA). Here, Petitioner's sentence was not enhanced by a prior "violent felony"

11

under the ACCA.

In *Fifer* and *Sanders,* the court vacated the district court's determination that the defendant was a career offender under Section 4B1.1 of the Sentencing Guidelines because the court relied solely on a presentence report that did not reference the judicial record as the basis for its information. In this case, the judgment for Petitioner's prior state court conviction was filed with the Section 851 Information. (Doc. No. 193-1 in Case No. 3:10-cr-00065). None of these cases provide relief for Petitioner.

In *Havis,* the Sixth Circuit, sitting *en banc,* addressed the issue of whether a defendant's prior Tennessee conviction for selling and/or delivering cocaine qualified as a "controlled substance offense" for purposes of enhancements under the Sentencing Guidelines. The court applied "the categorical approach" to the Tennessee statute at issue, Tennessee Code Annotated Section 47-18-417, and held (based on the parties' agreement) that the least culpable conduct under the statute was "the attempted delivery of a controlled substance." 927 F.3d at 384-85. Because the definition of a controlled substance offense in the applicable Sentencing Guideline did not include attempt crimes, the defendant's prior conviction did not satisfy the definition. *Id.,* at 385-87. Although "attempt" crimes were included as part of the commentary to the Sentencing Guideline, the court held that the commentary did not deserve deference. *Id.* While Petitioner's prior conviction rests on the same Tennessee statute as in *Havis,* Petitioner is challenging use of that conviction to extend the maximum sentence under the Controlled Substance Act, 21 U.S.C. § 841(b)(1)(D); he is not challenging its application to a Sentencing Guideline. Therefore, *Havis* does not apply.[1]

---

[1] The Court notes, however, that the prior conviction (possession of marijuana for resale under Tennessee Code Annotated Section 39-17-417), *was* used to increase Petitioner's base offense level under U.S.S.G. §

12

As discussed above, Section 841(b)(1)(D) extends the statutory maximum to 10 years if the defendant has a prior conviction for a "felony drug offense." "Felony drug offense" is defined in 21 U.S.C. § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." The Tennessee statute under which Petitioner was convicted prohibits a defendant from "knowingly . . . possess[ing] a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). Assuming the categorical approach applies in determining whether Petitioner's prior conviction qualifies under Section 802(44),[2] the Court has little hesitation is concluding that possession of marijuana with intent to sell (or resell) is a state law offense that "prohibits or restricts conduct relating to . . . marijuana." Accordingly, Petitioner has not shown the sentencing court erred in extending his maximum sentence for the drug trafficking conviction to 10 years.[3]

---

2K2.1(a)(4)(A). That enhancement was appropriate because the Sixth Circuit has held, post-*Havis*, that possession with intent to sell under Section 39-17-417 qualifies as a "controlled substance offense" under the guidelines. *United States v. Garth*, 965 F.3d 493 (6th Cir. 2020); *United States v. Beck*, ___ Fed. Appx. ___, 2021 WL 402465, at *5 (6th Cir. Feb. 5, 2021).

[2]    The Sixth Circuit held in *United States v, Soto*, 8 Fed. Appx. 535, 540 (6th Cir. 2001) that the categorical approach does not apply in determining whether a prior conviction constitutes a "felony drug offense" for purposes of Section 802(44). Since *Soto* was decided, however, the Supreme Court has applied the categorical approach in analogous contexts, and other circuits have held that it must be applied in construing Section 802(44). *See United States v. Thompson*, 961 F.3d 545, 549-52 (2nd Cir. 2020) (noting that the First, Third, Seventh, Eighth, and Ninth Circuits have applied the categorical approach in construing Section 802(44)).

[3]    Petitioner appears to argue that the categorical approach also undermines his conviction for violation of 18 U.S.C. § 924(c), as charged in Count Four of the Indictment. Count Four charged Petitioner with possession and discharge of firearms "in furtherance of a drug trafficking crime . . . to wit: possession with intent to distribute marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." (Doc. No. 22, at 3, in Case No. 3:10-cr-00065). "Drug trafficking crime" is defined in Section 924(c)(2) as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 *et seq.*)

13

### F. Enhancement for Law Enforcement Victim

Petitioner argues the district court erred at sentencing by applying a six-level "official victim" increase to his base offense level under United States Sentencing Guideline Section 3A1.2. Section 3A1.2 provides that the court is to apply a 6-level enhancement to the base offense level if "in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom."

Petitioner's trial counsel objected to the enhancement at the sentencing hearing on Sixth Amendment grounds, and because, in the confusion on the night in question, Petitioner did not know the victim was a police officer at the time the shot was fired. Counsel based his Sixth Amendment challenge on *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L.Ed.2d 314 (2013), in which the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime that must be submitted to the jury for decision. More specifically, the Court determined the statutory mandatory minimum sentence under 18 U.S.C. § 924(c)(1)(A)(ii) of seven years for "brandishing" a firearm during an offense that violates Section 924(c)(1)(A) could not be imposed on the defendant because the jury had not made the finding of "brandishing." *Id.*

Judge [Todd] Campbell concluded that the enhancement was appropriately applied:

First I am going to address the Sixth Amendment issue. It is the Court's

---

. . ." Section 841(a)(1) is part of the Controlled Substances Act, and prohibits possession with intent to distribute controlled substances, including marijuana. The offense is a "felony" because the maximum term of imprisonment is more than one year. 18 U.S.C. § 3559(a); 21 U.S.C. § 841(b)(1)(D). Therefore, the underlying crime charged in Count Four constitutes a "drug trafficking crime" for purposes of Section 924(c).

14

opinion that making a decision and factual finding on whether this enhancement applies or not doesn't violate the Sixth Amendment. The Court has the constitutional authority to determine the application or nonapplication of sentencing guideline enhancements that don't affect mandatory minimums, statutory maximums, et cetera. Simply a guideline decision within the statutory range. So I am denying the objection regarding the Sixth Amendment.

On the enhancement itself, I am also going to deny the objection. In the Court's view, Mr. Fuqua knew or had cause to know that Officer Grindstaff was a police officer. The facts are that there was a knock and announce. There was announcement over police car PA system. Blue lights flashing. There was a battering ram used on the door.

But even after all of that, if that wasn't sufficient, officers when they entered, they had on clearly marked police uniforms. Were announcing themselves as law enforcement officers. And at the point that Mr. Fuqua raised his gun towards the detective and fired at him, he knew or willfully disregarded that it was a police officer. So I am finding that there was cause by Mr. Fuqua to believe that Officer Grindstaff was a police officer and that the six-level enhancement does apply.

(Doc. No. 370, at 87-88, in Case No. 3:10-cr-00065).

The Sixth Circuit affirmed this conclusion:

Fuqua argues that the district court erred by enhancing his sentence under U.S.S.G. § 3A1.2(c)(1). That section increases a defendant's offense guideline by six levels if, 'in a manner creating a substantial risk of serious bodily injury, the defendant ... knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense[.]' U.S.S.G. § 3A1.2(c)(1). 'We review de novo a district court's application of the Sentencing Guidelines when that application involves mixed questions of law and fact and we review for clear error a district court's findings of fact in connection with sentencing.' *United States v. Stafford,* 721 F.3d 380, 400 (6th Cir.2013).

Fuqua contends that he did not know that he was shooting at a police officer when he fired his weapon. Per the testimony at trial, however, the police knocked and announced themselves three times before they entered; the officers activated blue emergency lights on a vehicle outside the home; Grindstaff heard people running inside the home; the officers announced 'Metro Police, search warrant, do not resist' as they entered the home; all of the officers wore clearly marked uniforms; and Grindstaff saw Fuqua backpedal and fire more-or-less directly at Grindstaff. This evidence supports the district court's finding that Fuqua knew that Grindstaff was a police officer when Fuqua shot his gun.

15

Fuqua also contends that this finding too should have been made by a jury rather than a judge. In support, he cites *Alleyne v. United States,* ___ U.S. ___, 133 S. Ct. 2151, 186 L.Ed.2d 314 (2013). But we have already held that '*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range[.]' *United States v. Cooper,* 739 F.3d 873, 884 (6th Cir.2014). And the § 3A1.2(c)(1) enhancement only increased Fuqua's guidelines range here. Hence this argument too is meritless.

(Doc. No. 416, at 9-10, in Case No. 3:10-cr-00065); *United States v. Fuqua*, 636 Fed. Appx. at 310-11.

Petitioner now argues the sentencing court did not make the findings required for application of Section 3A1.2(c)(1). As the transcript shows, however, Judge [Todd] Campbell specifically found that Petitioner knew or had reasonable cause to know that the victim was a police officer.

Petitioner also argues imposition of the enhancement violates *United States v. Anderson,* 416 Fed. Appx. 533 (6th Cir. 2011), *United States v. Hayes,* 135 F.3d 435 (6th Cir. 1988), and *United States v. Mills,* 1 F.3d 414, 423 (6th Cir. 1993). None of these cases support relief here. In *Anderson,* the court reversed application of the enhancement where the district court applied a "reasonably foreseeable" standard, rather than the "knowing or having reasonable cause to believe" standard of Section 3A1.2(c)(1). In *Mills,* the court reversed application of the enhancement because the district court did not make the required finding. In this case, Judge Campbell applied the correct standard and made specific findings.

In *Hayes,* the court concluded the defendant met the requirements for fleeing from a law enforcement officer, but held that increasing the offense level for that enhancement, as well as for reckless endangerment during flight (U.S.S.G. § 3C1.2), constituted impermissible double counting. Petitioner has not explained how the *Hayes* decision advances his argument here. This

16

claim is without merit.

### G.  Mental Health Mitigation

Petitioner argues the district court also erred at sentencing by denying his request for a downward departure based on diminished capacity, and failed to consider all evidence relating to his mental condition. Petitioner cites Sentencing Guideline Sections 5H1.3 and 5K2.13. Section 5H1.3 states: "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. See also Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)." Section 5K2.13 provides:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

"Significantly reduced mental capacity," as defined in Application Note 1, means "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. n.1.

17

Petitioner's trial counsel argued for application of the downward departure at sentencing, principally relying on a Forensic Report conducted by the Bureau of Prisons that diagnosed Petitioner with "mild mental retardation." (Doc. No. 89, at 8, in Case No. 3:10-cr-00065).

Judge [Todd] Campbell denied the request for a departure:

> On the diminished capacity, which is guideline 5K2.13, the Court finds that Mr. Fuqua is basically full-scale IQ of 53 is diminished. That's a low IQ. To put it in context on the mental retardation issue on executions, 70 is essentially the default standard.
>
> But in this particular case, his diminished capacity didn't contribute substantially to the offense, so I am denying the departure on 5K2.13.
>
> And on the guideline of 5H1.3, the Court's view is that defendant does have a mental condition that is a matter that qualifies under consideration for the Court particularly as it relates to variance, but I don't think this case is outside the heartland of Guideline 5H1.3 that it is present to an unusual degree based on combination with other offender characteristics present to an unusual degree and distinguished the case from the typical cases covered by the guideline. I don't think it is outside the guideline. This type of IQ is not uncommon in this court. But it does merit consideration in where the sentence should be calculated. And I am going to consider it in the Section 3553 factors, but declining to find – it is within the heartland of the two guidelines I have cited.
>
> So I think it is a consideration that needs to be taken into account, but it is not outside the heartland of the guidelines. So the departure request is denied.

(Doc. No. 370, at 121-22, in Case No. 3:10-cr-00065).

Petitioner argues the district court erred in denying the departure because the Forensic Report demonstrates he was unable to "exercise the power of reason." Petitioner also contends that a "direct causal link" between the reduced mental capacity and the crime is not required by the Sixth Circuit, citing *United States v. Sadolsky,* 234 F.3d 938 (6th Cir. 2000). In *Sadolsky,* the court held that Section 5K2.13 does not require "a direct causal link between the SRMC [significantly reduced mental capacity] and the crime charged." 234 F.3d at 943. In reaching its decision, the

18

court explained that Section 5K2.13 "does not distinguish between SRMCs that explain the behavior that *constituted* the crime charged and SRMCs that explain the behavior that *motivated* the crime." *Id.* Based on that interpretation, the court concluded that a reduction for the defendant, who argued his gambling disorder likely caused his fraudulent criminal conduct, was not inconsistent with the guideline. *Id.*

The Court is not persuaded that the sentencing court misapplied the guideline here. Petitioner has not cited to any portion of the Forensic Report, or to any other proof, indicating his low IQ either caused him, or motivated him, to commit the drug trafficking and firearms offenses charged. The Report does not suggest Petitioner was unable to "exercise the power of reason," as Petitioner suggests. Rather, the forensic examiner concluded that, while Petitioner experienced some intellectual limitations, he was competent to stand trial, having demonstrated "the ability to reason through concerns and raise questions to the examiner regarding his case, and indicated his willingness to do so with his lawyer in the future." (Doc. No. 89, at 9, in Case No. 3:10-cr-00065). Petitioner has not shown that the sentencing court erred in denying his request for a departure based on his intellectual disability.[4]

## H.  Ineffective Assistance of Counsel

Petitioner argues he received the ineffective assistance of counsel based on the following grounds: (1) counsel failed to challenge the affidavit supporting the search warrant for his residence; (2) counsel failed to raise a *Brady* claim regarding Trial Exhibit 8E, and failed to properly examine Trial Exhibit 8E; (3) counsel failed to challenge the sentencing court's

---

[4]    The Court notes that Judge [Todd] Campbell considered Petitioner's intellectual disability in applying the Section 3553 factors and in imposing a sentence at the bottom of the guideline range. (Doc. No. 370, at 133, 136, in Case No. 3:10-cr-00065).

19

application of the cross reference to attempted second degree murder; (4) counsel failed to challenge the sentencing court's application of 21 U.S.C. § 851; and (5) counsel failed to challenge the sentencing court's denial of his motion for downward departure based on mental incapacity.

In order to prevail on an ineffective assistance of counsel claim, the burden is on the petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficiency was prejudicial to the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 744, 203 L. Ed. 2d 77 (2019). The court need not address both requirements if the petitioner makes an insufficient showing on one. *Strickland*, 104 S. Ct. at 2069.

An attorney's performance is considered deficient "if counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). To prove deficient representation, the petitioner must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687. In reviewing counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.,* at 669.

To establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result "must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011).

Petitioner argues counsel was ineffective for failing to adequately challenge the affidavit

supporting the search warrant for his residence. Petitioner contends that counsel should have raised an argument under *Franks v. Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), that the items seized from his trash allegedly containing marijuana were not tested by a toxicologist. (Doc. No. 1, at 5; Doc. No. 4, at 3; Doc. No. 7, at 1-2; Doc. No. 23, at 9-21). Petitioner also appears to claim that these items were not provided in discovery sufficiently in advance of the suppression hearing. (*Id.*)

Under *Franks v. Delaware*, *supra*, a defendant may be entitled to an evidentiary hearing to determine whether a search warrant affidavit contains false statements that undermine the finding of probable cause. In order to show he is entitled to a *Franks* hearing, the defendant must make a substantial preliminary showing that: (1) specific false statements, made intentionally or with reckless disregard for the truth about material matters, were included in the search warrant affidavit; and (2) those statements were necessary to a finding of probable cause. *See, e.g., United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008).

A search warrant is based on probable cause when the supporting affidavit shows "'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Crawford*, 943 F.3d 297, 305 (6th Cir. 2019) (quoting *United States v. Higgins,* 557 F.3d 381, 389 (6th Cir. 2009)); *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). In making that determination, the issuing judicial officer is to examine the "totality of the circumstances." *Id.* When the validity of the search warrant is later challenged by a defendant, the reviewing court is limited to examining "only 'the information presented in the four-corners of the affidavit.'" *Id.* (quoting *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005)). A reviewing court must accord "great deference" to the decision of the issuing court, and reverse that

decision only where the issuing court's discretion was arbitrarily exercised. *Id.*

Suppression does not always follow when a search warrant is held to be unsupported by probable cause. In *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), the Supreme Court held that the exclusionary rule should not bar admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 104 S. Ct. at 3411; *see also United States v. Richards,* 659 F.3d 527, 542 (6th Cir. 2011). The *Leon* Court identified four situations in which the exception would not apply: (1) where the affidavit supporting the search warrant contains knowing or reckless falsity; (2) where the issuing magistrate failed to act in a neutral and detached manner; (3) where the support affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; and (4) where the warrant is so facially deficient, through, for example, lack of particularity regarding the place to be searched or the things to be seized, as to negate the possibility of objectively reasonable reliance. *Leon*, 104 S. Ct. at 3421.

The search warrant at issue here was issued for 2406 Booker Street, Nashville, Tennessee, based on an affidavit executed by Metro Detective Matthew Grindstaff. (Doc. No. 52-1 in Case No. 3:10-cr-00065). In the affidavit, Detective Grindstaff states:

> During the course of a narcotics investigation, your affiant received information that illegal narcotics were being sold, packaged, or consumed at the premises of 2406 Booker Street, Nashville, Davidson County, Tennessee. Detectives received information that a suspect known as 'Q' was selling marijuana and had a phone number of (615) 574-4798. Within the last 72 hours, detectives removed trash from a container placed in the alley directly behind the target location 2406 Booker Street, for regular trash service removal. The contents of the trash container were examined for evidence of illegal narcotics activity. A search of the contents produced five plastic bags with marijuana, seven smoked marijuana blunts, loose marijuana, a brown bag containing marijuana, a plastic bag with marijuana, a ruffles potato chip bag with marijuana, a large trash bag with marijuana, and a McDonald's cup with marijuana. Based on your affiant's training and experience, these items

22

were immediately recognized as narcotics, commonly used to consume narcotics, and commonly used to package narcotics for resale. Detectives also recovered a brown leather handgun holster. Weapons are commonly used by drug dealers to protect and secure their property, drugs and illegal profits.

Detectives located inside the tied trash bags with the narcotics, paperwork with the address 2406 Booker Street on it. Detectives recovered a recently dated receipt from 02/17/2010. Detectives also recovered paperwork with the Social Security Number: [redacted] it. The Social Security Number [redacted] shows a listing to Quincy Maurice Fuqua [redacted].

(*Id.,* at 2). The affidavit went on to state that the phone number for "Q" provided by the informant was listed to Petitioner; that the electric service for the residence was listed in Petitioner's name; that two vehicles parked at the residence were registered to Petitioner; and that a criminal history check for Petitioner revealed a history of narcotics and weapons violations. (*Id.*)

Petitioner's attorneys at the time, Mark Scruggs and Charles Johnson, filed motions to suppress (Doc. Nos. 50, 70 in Case No. 3:10-cr-00065), challenging the search warrant affidavit as lacking in probable cause. Counsel also argued the affidavit contained false statements that should be excised under *Franks v. Delaware, supra.* Counsel claimed the affidavit misled the issuing judge into believing illegal drugs were contained in the trash pull, but there was no lab report supporting that conclusion. (Doc. No. 70-1, at 7, in Case No. 3:10-cr-00065). At the hearing on the motions, counsel withdrew his request for a *Franks* hearing. (Doc. No. 170, at 2, in Case No. 3:10-cr-00065). After hearing argument from counsel, Judge [Todd] Campbell denied the motions, finding the trash pull reflected evidence of resale rather than personal consumption; the evidence was not stale given the recency of the trash pull and the date on the recovered receipt; and the items from the trash pull and elsewhere tied the evidence to the defendant. (*Id.,* at 17-21). The court alternatively found the *Leon* good faith exception supported denial of the motion to suppress. (*Id.,* at 21).

Some time later, after Petitioner requested and received substitute counsel, Michael Terry and Stephanie Gore, Co-defendant Owens filed a motion to suppress (Doc. Nos. 132, 135, 136, 137, 164 in Case No. 3:10-cr-00065), challenging the same search warrant, based on *Franks*. Petitioner's counsel filed a motion to join the challenge, which was granted. (Doc. Nos. 171, 172, in Case No. 3:10-cr-00065). At the hearing on the motion, counsel for the defendants presented evidence that the property evidence report used by Detective Grindstaff to check the evidence into the property room indicated the evidence came from an undercover buy instead of a trash pull; used the address of the police station rather than Petitioner's address as the location where the evidence was seized; and included the wrong date. (Doc. No. 185, at 15, 20, in Case No. 3:10-cr-00065). However, the property evidence report had not been presented to the judge who issued the search warrant. (*Id.,* at 26). Judge Campbell denied the motion because the errors in the property evidence report were not presented to, or relied upon, by the issuing judge, and the defendants had not shown any other information in the affidavit was false. (*Id.,* at 29-33).

On appeal, the Sixth Circuit rejected Petitioner's argument that the search warrant was not supported by probable cause. (Doc. No. 416, at 4, in Case No. 3:10-cr-00065); *United States v. Fuqua*, 636 Fed. Appx. at 307. The court pointed out that Detective Grindstaff's affidavit "recited that several containers in Fuqua's trash had been in contact with marijuana, that the trash had been put out within the previous week, and that the trash belonged to Fuqua." *Id.*

Petitioner appears to argue that counsel erred during the first suppression hearing by withdrawing the *Franks* challenge. (Doc. No. 1, at 5; Doc. No. 7, at 2; Doc. No. 23, at 11). According to Petitioner, counsel should have argued the marijuana referenced in the search warrant affidavit was never tested and a lab report was not provided. (*Id.*)

24

Counsel was not deficient for failing to request a *Franks* hearing based on the absence of a toxicology report. In his affidavit, Detective Grindstaff stated only that, based on his "training and experience," he "immediately recognized as narcotics" those items he listed in the affidavit as containing marijuana. Detective Grindstaff did not suggest to the issuing judge that he had tested the items, and it would have been unreasonable for the judge to assume that testing had been performed given the short time span (no more than 72 hours) between the trash pull and the request for a search warrant.[5] Challenging the search warrant on these grounds would have been meritless. Thus, Petitioner has failed to establish ineffective assistance of counsel with regard to the search warrant. *See, e.g., Coley v. Bagley,* 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) ("[T]here can be no constitutional deficiency" in failing to raise meritless arguments); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (counsel is not required to make meritless arguments to avoid a charge of ineffective assistance of counsel).

Petitioner argues counsel was ineffective for failing to raise a *Brady* claim regarding Trial Exhibit 8E, and for failing to properly examine Trial Exhibit 8E. (Doc. No. 1, at 4; Doc. No. 1-1; Doc. No. 4, at 4; Doc. No. 7, at 1; Doc. 23, at 8, 33). As the Court has explained, however, the repackaging of the evidence labeled as Trial Exhibit 8E by the testing laboratory did not affect the outcome of the trial. Therefore, even if the Court assumes counsel was deficient in failing to raise

---

[5] Petitioner also appears to suggest counsel should have raised a *Brady* challenge because all evidence of the trash pull was not provided during discovery. (*Id.,* at 10). Later in his brief, however, Petitioner states that the prosecutor provided his counsel with the trash pull evidence shortly before the suppression hearing. (*Id.,* at 18). Even if the Government's disclosure could be considered "late," Petitioner's *Brady* claim fails because he has not established that earlier disclosure would have bolstered his challenge to the search warrant, or that late disclosure otherwise prejudiced the defense.

a *Brady* claim regarding Trial Exhibit 8E, Petitioner has failed to establish he was prejudiced by that deficiency.

Similarly, even if counsel had "properly" examined Exhibit 8E before trial, they would have learned that the lab repackaged the evidence for safekeeping after testing. Presenting that evidence to the jury would not have affected the verdict in this case, as the Court has explained, especially in light of the other marijuana evidence presented at trial. Thus, any deficiency by counsel in failing to properly examine Exhibit 8E did not prejudice the defense. *See, e.g., Coley v. Bagley,* 706 F.3d at 752; *Mapes v. Coyle*, 171 F.3d at 413; *Ludwig v. United States*, 162 F.3d at 459.

Petitioner argues that counsel failed to challenge adequately the sentencing court's application of the cross reference in the sentencing guidelines for attempted second degree murder. (Doc. No. 4, at 5; Doc. No. 23, at 3-7). At sentencing, the court granted the Government's objection to the Presentence Report's failure to apply U.S.S.G. § 2K2.1(c)(1)(A) in arriving at the base offense level. At the time Petitioner was sentenced, Section 2K2.1(c)(1)(A) provided:

> (c)   Cross Reference
>
> > (1)   If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply –
> >
> > > (A)   § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above. . .

Section 2X1.1 directs the sentencing court to apply "the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct

that can be established with reasonable certainty." The offense deemed applicable by the sentencing court in this case was attempted second degree murder, which carries a base offense level of 27 under Section 2A2.1.

In reaching his decision to apply the cross reference, Judge [Todd] Campbell stated:

THE COURT:   I am going to grant the government's objection. I think it applies. This is a relevant conduct determination. It is not an enhancement determination. It is a determination about the base offense level. It is not an issue about an element of the crime. It is not an issue about a mandatory minimum. It's not an issue about statutory maximum, so there aren't Sixth Amendment *Apprendi* type issues. It is simply a cross-reference to determine the appropriate base offense level based on the relevant conduct. And relevant conduct is that Mr. Fuqua pointed his gun at Officer Grindstaff and fired it. And in the Court's view that qualifies under 2A2.1 for attempted second degree murder for not that crime but setting the base offense level for the crime of conviction.

[Defense counsel]:   Your Honor, in view of your ruling, we would ask the Court to state on the record specifically what fact the Court relies upon to find that this man had the specific intent to commit murder.

THE COURT:   All right. The officers, marked in clearly identifiable raid gear, knocked and announced their presence at the door. Also, with public address, with flashing blue lights. The officers heard running through the house. When Officer Grindstaff entered the house, a gunshot came in his direction. And then he announced his presence. He was in uniform stating that it was law enforcement, police. Officer Grindstaff observed Mr. Fuqua back pedal, raise his gun towards the detective, and fire at him.

That shows the requisite state of mind for attempting to kill someone by shooting at them.

I don't think it rises to the level of first degree murder attempt because of the malice of forethought [sic], deliberation required for a first degree murder charge. So I don't think the 33 base offense level would apply. But I do think the 27 would apply. And those are the reasons, for the record.

(Doc. No. 370, at 100-101, in Case No. 3:10-cr-00065).

In response to the ruling, defense counsel sought a continuance of the sentencing hearing, which the court denied, explaining that the defense had notice of the cross reference issue for

27

several months, and had fully briefed the issue. (*Id.,* at 101-05).

On appeal, the Sixth Circuit affirmed application of the cross reference:

Fuqua challenges that 'cross-reference' on three grounds. First he says the cross-reference is contrary to the Supreme Court's holding in *Alleyne.* But again the cross-reference only increased Fuqua's guidelines range, so that contention is meritless.

Second, Fuqua contends that insufficient evidence supports the district court's finding that Fuqua shot his gun at Grindstaff. Grindstaff's own testimony, however, supports the court's finding.

Third, Fuqua contends that the cross-reference was unlawful because he already had a conviction under § 924(c). Fuqua overlooks, however, that the cross-reference here elevated his base-offense level for his felon-in-possession conviction, not his drug-trafficking conviction. The rule that Fuqua seeks to apply bars only enhancement of *a drug conviction* when a defendant already has a § 924(c) conviction in connection with that drug conviction . . . Thus this contention too is meritless. The district court properly applied the cross-reference.

(Doc. No. 416, at 10-11, in Case No. 3:10-cr-00065); *United States v. Fuqua,* 636 Fed. Appx. at 311.

Here, Petitioner argues counsel failed to conduct an adequate investigation of the issue. But Petitioner has not specified the information defense counsel should have discovered during an investigation that reasonably likely would have impacted the sentencing court's decision. *See, e.g., Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim."); *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Petitioner appears to argue that counsel should have challenged application of the cross reference by relying on dismissal of the state charges that arose out of the same conduct as the crimes of conviction. In that regard, Petitioner's Presentence Report indicates that Petitioner was charged with attempted first-degree murder, aggravated assault, and other charges arising out of

28

the same incident. (Doc No. 369, ¶ 53, in Case No. 3:10-cr-00065). At the time of the sentencing hearing, the parties represented that the state charges were still pending. (Doc. No. 370, at 142, in Case No. 3:10-cr-00065). A review of the record does not readily reveal if or when the charges were dismissed. Thus, it is not clear that dismissal occurred in time for counsel to rely on it to challenge the cross reference.

In any event, dismissal of the state charges does not establish that Petitioner was *acquitted* of the conduct at issue. If the state dismissed the charges, it was likely because the state deemed the prosecution unnecessary in light of Petitioner's conviction and sentence on the federal charges. Moreover, even an acquittal in a state criminal case, where the burden of proof is "beyond a reasonable doubt," does not necessarily prevent enhancement under the guidelines at sentencing, where a preponderance-of-the-evidence burden of proof applies. *See, e.g., United States v. White,* 551 F.3d 381, 385 (6th Cir. 2008) (holding that a district court does not abridge the defendant's right to a jury trial by relying on acquitted conduct in selecting a sentence within the statutory range envisioned by the jury verdict); *United States v. Peterson,* 2021 WL 53256, at *5 (6th Cir. Jan. 6, 2021).[6] Thus, Petitioner has not established counsel was deficient in failing to challenge the cross reference on this basis, or that the defense was prejudiced by that failure.

Petitioner also appears to argue that, because the cross reference was applied to Co-defendant Owens, it could not be applied to him. As discussed above, Mr. Owens pled guilty to

---

[6]     Petitioner's citation of *Nelson v. Colorado*, ___ U.S. ___, 137 S. Ct. 1249, 1251, 197 L. Ed. 2d 611 (2017) does not suggest otherwise. In *Nelson,* the Supreme Court struck down Colorado statutes that required defendants whose convictions had been vacated to prove their innocence by clear and convincing evidence in order to obtain a refund of costs imposed as a result of the conviction. The Sixth Circuit has held that *Nelson* does not apply to a court's consideration of uncharged or acquitted conduct in applying the sentencing guidelines. *See United States v. Rankin,* 929 F.3d 399, 408 (6th Cir. 2019); *United States v. McShan,* 757 Fed. Appx. 454, 466 (6th Cir. 2018).

29

unlawful possession of a firearm by a convicted felon through a Plea Agreement with the Government. (Doc. No. 306, at 7 of 18, in Case No. 3:20-cr-00065). Through the agreement, the Government agreed to dismiss the remaining charges against Mr. Owens at sentencing, and Mr. Owens agreed to application of the guideline enhancement for using a firearm in connection with another felony offense.[7] (*Id.,* at 7). The parties also agreed to a sentence of 120 months of imprisonment. (*Id.,* at 8). At Mr. Owens' sentencing hearing, the court applied the cross reference in arriving at Mr. Owens' sentencing guidelines range, based on the evidence at Petitioner's trial, but recognized Mr. Owens did not want to admit the underlying conduct given the pendency of state charges. (Doc. No. 346, at 20-21, in Case No. 3:10-cr-00065). The parties did not specify a particular felony in discussing the cross reference.

At some point after his sentencing hearing, Mr. Owens apparently pled guilty in state court to attempted manslaughter and to employment of a firearm during a dangerous felony. (Doc. No. 414, at 4, in Case No. 3:10-cr-00065). Petitioner's counsel relied on that guilty plea, and other statements from Mr. Owens, in seeking a new trial for Petitioner based on "newly discovered" evidence. (*Id.*) Petitioner argued these statements proved that it was Mr. Owens who fired his gun at Detective Grindstaff.

Judge [Todd] Campbell denied Petitioner's motion, explaining that Mr. Owens' statements had evolved over time, but the information in the statements was not newly discovered. (*Id.,* at 5). A new trial was not warranted, according to Judge Campbell, because the information in the statements did not rebut any element of the crimes charged, and were merely impeaching with regard to Detective Grindstaff's testimony. (*Id.,* at 6). As for sentencing, Judge Campbell pointed

---

[7]     The agreement did not identify a specific felony.

30

out that Rule 33 was not the appropriate vehicle for requesting a new sentencing hearing, but "[i]n any event, given the evolving nature of Mr. Owens' version of events on the night of the shooting and his obvious credibility problems, the Court concludes that the statements would not likely have produced a different finding at Defendant's sentencing had the statements been available at that time." (*Id.*).

The crux of Petitioner's argument here is that only one of the defendants – either Petitioner or Mr. Owens – could have been guilty of using a firearm in connection with another felony offense. The evidence in the record, however, supports the Government's theory that both defendants committed felonies when they discharged their firearms – Mr. Owens committed attempted manslaughter (or aggravated assault) by firing his gun once the officers entered the residence, and Petitioner committed attempted second degree murder by firing his gun while aiming at Detective Grindstaff. Thus, application of the cross section to Mr. Owens did not undermine application of the cross section to Petitioner.

As for Petitioner's ineffective assistance claim, in the Court's view, counsel was not deficient for failing to challenge application of the cross reference because counsel *did* raise such a challenge in the motion for new trial based on Mr. Owens' conduct. Even if counsel had not, however, the argument did not have merit for the reasons discussed above, and therefore, the defense was not prejudiced by any alleged failure. Petitioner has failed to establish ineffective assistance of counsel on this ground. *See, e.g., Coley v. Bagley,* 706 F.3d at 752; *Mapes v. Coyle*, 171 F.3d at 413; *Ludwig v. United States*, 162 F.3d at 459.

Petitioner also argues counsel failed to challenge the sentencing court's application of 21 U.S.C. § 851 (Doc. No. 7, at 2; Doc. No. 25), and failed to challenge the sentencing court's denial

31

of his motion for downward departure based on mental incapacity. (Doc. No. 4, at 3-4; Doc. No. 23, at 23-28). As explained above, these challenges would have been rejected. As the arguments were meritless, counsel was not ineffective for failing to raise them. *See, e.g., Coley v. Bagley,* 706 F.3d at 752; *Mapes v. Coyle*, 171 F.3d at 413; *Ludwig v. United States*, 162 F.3d at 459.

Petitioner has failed to establish he received the ineffective assistance of counsel in his criminal proceedings.

## IV. <u>Conclusion</u>

For the reasons set forth above, Petitioner's Motions to Vacate (Doc. Nos. 1, 4, 7, 23, 25) are denied, and this action is dismissed.

If Petitioner gives timely notice of an appeal from the Court's Memorandum and Order, such notice shall be treated as an application for a certificate of appealability, 28 U.S.C. § 2253(c), which will not issue because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *Castro v. United States,* 310 F.3d 900 (6th Cir. 2002).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

32